**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 02-30172
_____


MARGIE B. BROWN; DIANNE DUGUE;
LORRAINE HUNTER; GLENN BUTLER,

                                        Plaintiffs-Appellants,

v.

CATERPILLAR, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans
(01-CV-1186-N)
_____
December 6, 2002

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM[*]:

Margie B. Brown, Dianne Dugue, Lorraine Hunter, and Glenn Butler ("Plaintiffs-Appellants") appeal from the district court's grant of summary judgment dismissing their products-liability action against Caterpillar, Inc. ("Caterpillar"). Plaintiffs-Appellants sued Caterpillar under the Louisiana Products Liability Act ("LPLA") as representatives of the estate of George Butler, who was killed while operating a backhoe manufactured by Caterpillar.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Concluding that Plaintiffs-Appellants have not met their burden of proffering material evidence of a genuine factual dispute that would require a jury trial under the LPLA, we affirm.

## I. FACTS & PROCEEDINGS

During the course of his employment with Barriere Construction Company, Inc. ("Barriere"), Butler was killed while operating a Model 416B backhoe front-end loader ("backhoe") manufactured by Caterpillar. No one witnessed Butler's death, but he apparently was crushed between the backhoe's boom and the rear stabilizer.

Butler's supervisor, David McDaniel, discovered the body shortly after the accident occurred. When McDaniel reached the accident scene, he saw that (1) Butler was outside the operator's cab, pinned in a standing position between the boom and the rear stabilizer; (2) the backhoe's engine was still running; (3) a long metal bar, neither manufactured nor furnished by Caterpillar, was protruding from the operator's cab; and (4) this metal bar was pressing the swing control lever that activates the boom.

McDaniel does not know why Butler was outside the operator's cab, why the metal bar was inside the cab, or why Butler left the backhoe's engine running when he dismounted the vehicle. McDaniel had previously instructed Butler to turn off the backhoe's engine when dismounting the vehicle and never to keep tools and supplies in the operator's cab. To this date, it is unknown why Butler dismounted the backhoe, and Barriere's repeated inspections of the vehicle following the accident revealed no malfunctions or

operational problems.

As part of its manufacturing process, Caterpillar affixes various warning labels to the Model 416B backhoe. One such factory-installed decal was affixed in the area where Butler was killed. It warns: "Stay Clear of this area when machine is operating. You can be crushed by swinging boom." Each backhoe is equipped with a "boom swing lock pin," which, when enabled, renders the boom swing inoperative. In addition, an Operation and Maintenance Manual provided with each backhoe manufactured by Caterpillar instructs operators to turn off the engine whenever dismounting. Finally, a decal in the operator's cab warns users: "Do not operate or work on this machine unless you have read and understand the instructions and warnings in the Operation and Maintenance Manual."

Plaintiffs-Appellants alleged that Caterpillar was liable for Butler's death under the LPLA. They asserted claims based on allegations of defective design and failure to warn. The district court granted Caterpillar's motion for summary judgment and dismissed the suit against it, finding that Plaintiffs-Appellants had produced no material evidence that Butler's death was caused by either a defective design or a failure to warn users of the backhoe. Plaintiffs-Appellants timely filed a notice of appeal.

## II. ANALYSIS

We review a grant of summary judgment <u>de novo</u>, applying the

same standard as the district court.[1]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[2]  In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party.[3]  The nonmoving party, however, cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence.[4]

The LPLA provides that a "manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product."[5]  To be "unreasonably dangerous," a product must, inter alia, suffer from a defect in its design or provide inadequate warnings.[6]  Furthermore, "[t]he characteristic of the

---

[1] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[2] Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[3] Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000).

[4] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[5] LA. REV. STAT. ANN. § 9:2800.54(A) (West 1997).

[6] Id. at § 9:2800.54(B)(2)-(3).  A product may also be "unreasonably dangerous" under the LPLA because of its

product that renders it unreasonably dangerous must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product."[7]

This statute specifies four elements required to make out a prima facie case against a manufacturer of a product:  A "claimant must show (1) damage, that (2) was proximately caused by (3) a characteristic of an unreasonably dangerous product during (4) a reasonably anticipated use of that product."[8]  At the summary judgment stage, plaintiffs typically face a "two-tiered burden" under the LPLA: they must proffer material evidence indicating that (1) damage was "caused by a characteristic of the product that renders it unreasonably dangerous," and (2) damage occurred during a "reasonably anticipated use" of the product.[9]  Having carefully reviewed the record, the parties' briefs, and the relevant case law pertaining to the LPLA, we agree with the district court's conclusion that Plaintiffs-Appellants failed to meet both of these burdens.

---

construction, id. at § 9:2800.54(B)(1), or its failure to conform to an express warranty provided by the manufacturer, id. at § 9:2800.54(B)(4).

[7] Id. at § 9:2800.54(C).

[8] Pickett v. RTS Helicopter, 128 F.3d 925, 928 (5th Cir. 1997).

[9] Kampen v. American Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998) (en banc).

The principal means by which a products-liability plaintiff submits material evidence of either a defective design or a failure to warn is through an expert witness's report. Yet at the time Caterpillar filed its motion for summary judgment, Plaintiffs-Appellants had not produced an expert's report indicating either the availability of an alternative design or a risk-utility analysis indicating the reasonableness of adopting such an alternative design. A court cannot assess whether a product is "unreasonably dangerous" without such information.[10] The Plaintiffs-Appellants attempted to remedy this fatal omission by belatedly filing a letter from their expert, but that letter—comprising eight brief, summary paragraphs — does nothing more than reiterate the conclusional allegations and unsubstantiated inferences of Plaintiffs-Appellants' complaint.

In contrast, Caterpillar provided extensive evidence through its submissions of copies of the warning decals, backhoe operational manual, deposition testimony, and affidavits, all showing that the backhoe, at the time it left Caterpillar's control, was reasonably safe and provided adequate warnings. Simply put, Plaintiffs-Appellants have utterly failed to provide factual support for a single, specific material allegation that

---

[10] See Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 183 (5th Cir. 1990) (affirming, under the LPLA, summary judgment for manufacturer because plaintiff's "proof of the risk that might have been avoided by the alternative design and of the burden that switching to that design would have entailed was, to say the least, incomplete")

would satisfy their burden under either the LPLA or Rule 56.[11]

Furthermore, Plaintiffs-Appellants have not offered any material evidence indicating that Butler was engaged in a "reasonably anticipated use" of the backhoe when he was killed. Under the LPLA, "a manufacturer will not be responsible for accounting for every conceivable foreseeable use of a product."[12] "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached."[13] Thus, if at the time of the accident, Butler was using the backhoe in a manner that could not reasonably have been anticipated by Caterpillar, neither we nor the district court need even reach the issue whether the backhoe is "unreasonably dangerous."

Plaintiffs-Appellants submitted only pure conjecture —— their self-admitted suspicion —— that Butler may have been attempting to investigate or fix a mechanical failure on the backhoe. They offer no evidence for this theory beyond a purely speculative inference,

---

[11] Green v. BDI Pharmaceuticals, 803 So. 2d 68, 72 (La. Ct. App. 2001) (affirming summary judgment for defendant because plaintiff's "opposition to the motion for summary judgment, and the attached documents, contained nothing related to any alternative design").

[12] Butz v. Lynch, 762 So. 2d 1214, 1218 (La. Ct. App. 2000).

[13] Kampen, 157 F.3d at 309. See also Johnson v. Black & Decker U.S., Inc., 701 So. 2d 1360, 1366 (La. Ct. App. 1997) ("A manufacturer can be liable only if the damage arose from a reasonably anticipated use of the product, and if not, then a court need not reach the issue of whether the product is unreasonably dangerous.").

7

based on their interpretation of a photograph of the backhoe taken after the accident, that there might have been an "implied leak" of hydraulic fluid. It remains essentially unknown, however, <u>why</u> Butler dismounted from the backhoe; and Barriere's documented inspections of the backhoe after the accident revealed no evidence of such a fluid leak —— or of any other malfunctions or operational problems for that matter.

## III. CONCLUSION

Like their summary judgment submissions, Plaintiffs-Appellants' briefs contain a dearth of substantiated material facts, but a plethora of unsubstantiated assertions and speculative inferences piled on top of speculative inferences. Under both the LPLA and Rule 56,[14] a products-liability plaintiff's "burden is not satisfied [by asserting] 'some metaphysical doubt as to the material facts.'"[15] Because Plaintiffs-Appellants have submitted nothing more than bald assertions that are tantamount to "metaphysical doubt" concerning Caterpillar's design of the backhoe and Butler's actions at the time of the accident, the district

---

[14] "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth <u>specific</u> <u>facts</u> showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) (emphasis added). <u>See also</u> <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993) ("Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.").

[15] <u>Little</u>, 37 F.3d at 1075 (quoting <u>Matsushita Elec. Indust. Co., Ltd v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1988)).

court's grant of summary judgment dismissing Plaintiffs-Appellants'

action against Caterpillar is, in all respects,

AFFIRMED.

S:\OPINIONS\UNPUB\02\02-30172.0.wpd
4/29/04  9:31 am